# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. |
| v. | * | SECTION: |
| MICHAEL BROWN | * | |

* * *

## FACTUAL BASIS

In support of the defendant **MICHAEL BROWN's** ("**BROWN**") guilty plea to Counts 1 and 2 (murder through use of a firearm, and carjacking) of the Bill of Information, the Government submits that it could prove the following facts beyond a reasonable doubt, through credible testimony and the production of reliable evidence:

### Carjacking on May 31, 2015

**BROWN** and H.J. spoke over the telephone and agreed to carjack a vehicle. H.J. picked up **BROWN** in H.J.'s girlfriend's car, and they drove to the vicinity of Vienna St. and Spain St., in New Orleans. Once there, they saw a rental 2015 white Dodge Ram, parked in the area, with an individual standing near the truck. **BROWN** approached the aforementioned individual, and pointed a revolver with black tape wrapped around the handle at the individual. **BROWN** demanded the keys to the truck. The individual complied, and both H.J. and **BROWN** left the area. At trial, the government would call a representative from FCA US LLC, who would testify that the aforementioned Dodge Ram was not manufactured in the state of Louisiana, and was therefore transported, shipped, or received in interstate commerce.

<u>**Murder of Jacquez Young and Attempted Murder of J.M. on June 1, 2015**</u>

On June 1, 2015, **BROWN**, H.J., and K.F. murdered J.Y. and attempted to murder J.M. The purpose of the murder was to protect K.F's marijuana trafficking enterprise, and to retaliate against J.M., who had threatened K.F.'s enterprise. Specifically, K.F. regularly purchased and sold marijuana in the New Orleans metropolitan area. Moreover, the genesis of the murder was a specific marijuana transaction, which occurred prior to April 22, 2015, between K.F. and another individual, D.L. That transaction occurred as part of K.F.'s marijuana enterprise. K.F. had purchased marijuana from D.L. that K.F. believed was of low quality and demanded a refund. D.L. would not provide a refund. Subsequently, on April 22, 2015, K.F. and J.Q. shot D.L. (non-fatal). **BROWN** was also present during that incident.

J.M., who was incarcerated at the time that D.L. was shot, was one of D.L.'s associates, and had indicated that he would retaliate against K.F. once J.M. was released from jail. K.F. intended to preemptively murder J.M. **BROWN**, H.J., and K.F. had several discussions about their intentions to ~~murder J.M.~~ retaliate against J.M.

On June 1, 2015, **BROWN**, H.J., and K.F. were together in the previously carjacked Dodge Ram, and drove around to attempt to procure marijuana. While in the area of Whitney Ave., in Gretna, they observed J.M. in the area. **BROWN**, H.J. and K.F. agreed to potentially shoot J.M. K.F. was driving the truck, H.J. was in the front passenger seat, and **BROWN** was in the rear passenger seat.

Subsequently, **BROWN**, H.J., and K.F. observed J.M. enter the front passenger side of a 2008 blue Audi AA4. **BROWN**, H.J., and K.F. later observed the Audi stop at a stop sign at Cooper Road and Whitney Avenue, when it made a right turn onto Whitney Avenue heading towards Stumpf Blvd. At that

time, **BROWN** was armed with a revolver with black tape around the handle. K.F. was armed with a .40 caliber Smith and Wesson, which he handed to H.J.

Eventually, the Dodge Ram pulled up next to the Audi on Whitney Avenue. The Dodge Ram was in the left lane, and the Audi was in the right lane. After pulling up next to the Audi, K.F. said, "What's up" to J.M. and the driver of the Audi, J.Y. **BROWN** then began shooting into the Audi several times. H.J. also fired into the Audi. J.Y. was killed instantly, and J.M. was hit several times.

### Attempted Carjacking on June 1, 2015

After the murder, **BROWN**, H.J., and K.F. traveled to the vicinity of N. Prieur Street, in New Orleans in the carjacked white Dodge Ram because **BROWN** indicated that he wanted to procure another car through theft. **BROWN**, H.J., and K.F. observed a gold 2013 F-250 parked on N. Prieur Street. H.J. covered his face, got out of the car, and pointed the aforementioned .40 caliber Smith and Wesson firearm at the victim. The victim fled from the location in the F-250. At trial, the government would call a representative from the Ford Motor Company, who would testify that the aforementioned gold 2013 F-250 was not manufactured in the state of Louisiana, and was therefore transported, shipped, or received in interstate commerce.

### Carjacking on June 1, 2015

Also on June 1, 2015, **BROWN**, H.J., and K.F., driving in the previously carjacked Dodge Ram, observed a red 2014 Chevrolet Cruze, in the vicinity of Independence Street in New Orleans. **BROWN**, H.J., and K.F. agreed to carjack the aforementioned Chevrolet Cruze utilizing a firearm. If called at trial, the victim would testify that one of the aforementioned three individuals approached the victim with a firearm, pointed it at the victim, and demanded her car keys. The victim would further testify that she complied by turning over her car keys, and that individual drove away in the Chevrolet Cruze. **BROWN,**

H.J. and K.F. then left the area. At trial, the government would call a representative from the General Motors Company, who would testify that the aforementioned Chevrolet Cruze was not manufactured in the state of Louisiana, and was therefore transported, shipped, or received in interstate commerce.

### Robbery/Gun Trade/Carjacking on June 3, 2015 & June 4, 2015

Over the next few days, while located in the Eastern District of Louisiana, K.F. contacted a friend of his, N.H., living in the vicinity of Centerville, Mississippi, over the telephone, to attempt to trade the firearms that were used in the murder of J.Y. (although N.H. was unaware that the firearms had been used in a murder). N.H. agreed to facilitate the trade. During those telephone calls, K.F. also inquired about the possibility of robbing a drug dealer in Mississippi. K.F. intended to bring the proceeds of the robbery to the Eastern District of Louisiana.

On June 3, 2015, **BROWN**, H.J., and K.F. traveled from New Orleans to Mississippi in the carjacked Chevy Cruze to meet with N.H. Although **BROWN**, H.J., and K.F. brought two guns for trade (the revolver and the Smith and Wesson), ultimately, N.H. only wanted to trade for the Smith and Wesson. N.H. had a 9mm firearm that he would trade for the .40 caliber. Subsequently, N.H. showed **BROWN**, H.J., and K.F. the location of a local drug dealer, who was the robbery target.

Later on that night, after dropping off N.H., **BROWN**, H.J., and K.F., returned to the location of the local drug dealer. After arriving, all three got out of the Chevy Cruze and approached the house. H.J was stationed by the back door, and eventually, **BROWN** and K.F. were at the front door. After **BROWN** knocked on the front door, the victim opened the door. Ultimately, K.F. kicked in the door and pointed the .40 caliber Smith and Wesson at the victim. **BROWN** also pulled out his revolver. A struggle ensued, and during the struggle, K.F. discharged his gun at least one time. K.F. also instructed **BROWN** to shoot the victim, but **BROWN** was unable to do so because his gun jammed. Ultimately,

the victim acquiesced, and K.F. and **BROWN** entered the house. The victim's girlfriend was also inside the house, and **BROWN** held onto the girlfriend while K.F. searched the house. H.J. also entered the house and took part in searching. At some point, the victim was able to flee from the house. **BROWN**, H.J., and K.F. continued to search, while holding the girlfriend at gunpoint, and found a large quantity of marijuana, synthetic marijuana, some money, at least one cellular phone, and an AK-47 style assault rifle. **BROWN**, H.J., and K.F. then met with N.H. at another location, and provided him with a portion of the stolen drugs in exchange for his participation in the robbery.

While they were still in Mississippi, the gun trade was completed, the Smith and Wesson was left with N.H., and later, H.J., K.F., and **BROWN** traveled back to New Orleans with the 9mm pistol, the revolver, the AK-47, the marijuana, and the synthetic marijuana. **BROWN** was driving the car. While on the way back, while the car was driving, K.F. leaned out of the window and fired several rounds into the air from the AK-47 to test its operability.

Near Zachary, Louisiana, the police attempted to pull over the Chevy Cruze. **BROWN** led them on a high speed chase, ultimately leading to a crash near the intersection of I-10 and Highway 19. **BROWN**, H.J., and K.F. were not seriously injured (although the car was severely damaged), and fled on foot with, among other things, the AK-47, the 9mm and the revolver. Officers from the Zachary Police Department later recovered a quantity of marijuana from the crash site.

After the crash, **BROWN**, H.J., and K.F. walked along I-10 for a period of time until they encountered a 2004 GMC Yukon parked in a lot on Longfellow Drive in Baton Rouge. They encountered the GMC Yukon on June 4, 2015. Using firearms, including the AK-47 style assault rifle and the revolver, **BROWN**, H.J., and K.F. then took the vehicle forcibly, got onto I-10, and drove back to New Orleans. At trial, the government would call a representative from the General Motor Company, who

would testify that the aforementioned GMC Yukon was not manufactured in the state of Louisiana, and was therefore transported, shipped, or received in interstate commerce.

The morning after returning to New Orleans, K.F. was arrested, and the aforementioned AK-47 style assault rifle was seized from K.F.

### Carjacking on June 6, 2015

On June 6, 2015, H.J. and **BROWN** were traveling together in the vicinity of Sere Street in New Orleans, when they observed a Pontiac Grand Prix in the area, with a female sitting inside. **BROWN** approached the woman on foot holding a firearm, and pointed it at her direction. **BROWN** demanded the keys to the Grand Prix, which the victim provided to **BROWN**. **BROWN** and H.J. then left the area. Several hours later, **BROWN** and H.J. were in the Grand Prix together when a marked New Orleans Police Department vehicle approached the Grand Prix. **BROWN** then led the police car on a chase in New Orleans, ultimately jumping out of the Grand Prix and running on foot. At trial, the government would call a representative from the General Motor Company, who would testify that the aforementioned Grand Prix was not manufactured in the state of Louisiana, and was therefore transported, shipped, or received in interstate commerce.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts, but rather is a minimum statement of facts intended to prove the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for **BROWN's** plea of guilty to the charged crimes in Counts 1 and 2 of the Bill of Information.

READ AND APPROVED:

Jeffrey Smith, Esq.  Date
Counsel for Michael Brown

Jonathan L. Shih  Date
Assistant United States Attorney

Michael Brown  Date
Defendant

Joseph K. Wheatley  Date
Trial Attorney, U.S. Department of Justice